# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1210

_____

| | |
|---|---|
| Peter L. Dahl; Lisa Dahl, husband and wife,     Plaintiffs - Appellants,       v. Rice County, Minnesota; Richard Cook, in his individual and official capacity; Carl Rabeneck, in his individual and official capacity; William Skarupa, in his individual capacity,     Defendants - Appellees. | Appeal from the United States District Court for the District of Minnesota. |

_____

Submitted: November 19, 2009
Filed:  September 13, 2010

_____

Before WOLLMAN, JOHN R. GIBSON, and SHEPHERD, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Peter L. Dahl and his wife brought this suit against Rice County, Minnesota, the Rice County Sheriff, and two other sheriff's department employees, seeking damages for Dahl's physical injuries pursuant to 42 U.S.C. § 1983.  They alleged  violations of Dahl's First and Fourteenth Amendment rights, along with various state law claims.

The district court[1] entered summary judgment for the defendants, and the Dahls now appeal the claims against the county, along with the First Amendment claim against the three individual defendants and the procedural due process claim against the county and Cook. We affirm.

I.

Peter L. Dahl worked as a deputy sheriff in the Rice County Sheriff's Department from 1992 until his termination in 2006. On August 18, 2005, Rice County Sheriff Richard Cook emailed Dahl to reprimand him for his unauthorized purchase of badges that had been charged to Rice County. The invoice listed Dahl's name. In response to Sheriff Cook's email, Dahl wrote that he was "simply the contact person" and that he "never charged anything to [the] office." Dahl, complaining of the "hostile and condescending tone" in Sheriff Cook's email, also stated that "the tone of some messages we deputies have been receiving has brought the morale of this department to its proverbial knees."

On August 22, 2005, Sheriff Cook requested a meeting with Dahl to discuss the unauthorized charges. Dahl secretly tape recorded the meeting. Although both parties agreed that Sheriff Cook used inappropriate language, they offer different accounts of what occurred during the meeting. Dahl asserts that Sheriff Cook struck Dahl in the chest with the heel of his hand, causing Dahl to injure his back. Sheriff Cook claims he put his hand out to stop Dahl from moving close.

Later that day, Dahl completed a First Report of Injury and an Accident Report. In the Accident Report, Dahl indicated "sheriff lost his temper" as the cause of the incident. Dahl reported the incident to the Rice County Administrator, who

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

encouraged Dahl to utilize the Employee Assistance Program. Dahl also filed a criminal complaint with the Faribault Police Department, which referred Dahl's complaint to the Lakeville Police Department and to the Lakeville City Attorney. The Lakeville City Attorney later informed Dahl that they would not prosecute Sheriff Cook.

Dahl alleges that after he complained about Sheriff Cook, Carl Rabeneck, the Emergency Services Director, began to stalk Dahl and his family at Sheriff Cook's direction. In addition, Dahl asserts that Rabeneck and William Skarupa, a sergeant in the Rice County Sheriff's Department, defamed Dahl by telling others that Dahl had fabricated his report and complaint.

On September 2, 2005, Dahl's doctor wrote a note stating that Dahl was unable to return to work due to a back injury. On August 10, 2006, the Rice County Administrator sent a termination letter to Dahl. The letter stated that "Rice County has determined, based on medical reports that it has received, that [Dahl is] medically unfit to perform the duties of a Rice County Deputy Sheriff."

Dahl and his wife brought this suit against Rice County, Minnesota; Sheriff Cook; and sheriff's department employees, Rabeneck and Skarupa. Defendants Cook and Rabeneck are sued in their individual and official capacities, while Skarupa is sued in his individual capacity. The Dahls seek damages under 42 U.S.C. § 1983 for physical injuries, alleging violations of Dahl's First and Fourteenth Amendment rights and several state-law claims, including assault, battery, intentional infliction of emotional distress, violation of the Minnesota Whistleblower Act, defamation, and loss of consortium. The district court dismissed the claims by order dated December 23, 2008 in a grant of summary judgment. The district court dismissed the federal constitutional counts with prejudice and the state law claims without prejudice. The Dahls appeal as to their First Amendment retaliation claim and their procedural due process claim, arguing that the district court should not have granted summary

judgment on those counts because a genuine issue of material fact exists in establishing the following: (1) Rice County is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978); (2) the validity of Dahl's First Amendment claim; and (3) Dahl's liberty interest that forms the basis of his procedural due process claim.[2]

## II.

We review a district court's grant of summary judgment de novo, applying "the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party." Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Co., 465 F.3d 900, 903 (8th Cir. 2006). Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Although we view the facts and inferences in the light most favorable to the Dahls, they have the obligation to come forward with specific facts showing that there is a genuine issue for trial. See Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## A.

First, Dahl appeals the district court's grant of summary judgment on First Amendment and procedural due process section 1983 claims against Rice County, Minnesota. He urges us to reverse the judgment of the district court because he contends that there are legitimate questions of material fact concerning whether Rice County is liable under 42 U.S.C. § 1983 because Sheriff Cook had final policy-making authority in the sheriff's department.

---

[2]The Dahls do not appeal the dismissal of their claims against Skarupa. The Dahls have set forth a brief recitation of the factual allegations against Rabeneck. But, by failing to assert grounds for reversal in their brief, the Dahls have waived issues against him on appeal. See Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008).

Under 42 U.S.C. § 1983, a governmental entity may not be held vicariously liable for the unconstitutional acts of employees. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). However, a governmental entity may be held liable if a plaintiff proves that its policy or custom was the "moving force [behind] the constitutional violation." Id. A policy can be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).

Our review of the record regarding whether the county is liable yields the same result as that reached by the district court. Viewing the facts in the light most favorable to Dahl, we conclude, as did the district court, that there is no evidence in the record suggesting that Sheriff Cook or Rice County maintains a policy or custom of corporal punishment. Yet, Dahl asserts that because Sheriff Cook is an autonomous "policy maker," his decision to allegedly assault Dahl constitutes a policy of Rice County. Moreover, he asserts that Cook's action was ratified by other Rice County elected officials when they spoke out in favor of Cook. Dahl's argument misses the mark. Although a policy can be inferred from a single decision, no such deliberative action occurred. There is no evidence that this single incident of Sheriff Cook losing his temper represents a policy of Sheriff Cook's or of Rice County's. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). Accordingly, Dahl's section 1983 based on the First Amendment and procedural due process claims against Rice County fail.

B.

Next, we turn to the argument that the government may not treat Dahl adversely by discharging him in retaliation for his exercise of free speech. The district court granted summary judgment in favor of defendants on the grounds that the speech at issue was not protected under the First Amendment because it was not a matter of public concern, as required by Connick v. Myers, 461 U.S. 138 (1983). "In order to

establish a claim of unlawful First Amendment retaliation, a public employee must show that he suffered an adverse employment action that was causally connected to his participation in a protected activity." Duffy v. McPhillips, 276 F.3d 988, 991 (8th Cir. 2002). To demonstrate that Dahl engaged in a protected activity, he must show that his allegedly protected statement was made as a citizen on a matter of public concern. See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). Speech involves a matter of public concern when it relates to a matter of political, social, or other community concern. Connick, 451 U.S. at 146. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id. at 147.

> The focus is on the role the employee has assumed in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution.

Cox v. Dardanelle Pub. Sch. Dist., 790 F.2d 668, 672 (8th Cir. 1986).

Applying this analysis to the instant case, we are persuaded that the district court properly granted summary judgment in favor of the defendants on the First Amendment claim. Viewing the facts in the light most favorable to Dahl and looking at the record as a whole, Dahl was not "informing the public" that the department was engaged in "misfeasance, malfeasance or nonfeasance," but rather he focused on Sheriff Cook's unpleasant demeanor. See Cox, 790 F.2d at 672. This is not a case where an employee arranges to speak out in a private manner on a matter of public concern, one not tied to a personal employment dispute. See Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 415-16 (1979). Not only does the record indicate that the Sheriff did not have previous notice of low morale, but it also shows that Dahl's statements were closely tied to a personal employment dispute that he had with

Sheriff Cook, specifically about the unauthorized badge purchases. Such a comment does not attain the status of public concern simply because "its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." Connick, 461 U.S. at 148 n.8. Accordingly, we are persuaded by the district court's conclusion that the First Amendment claim cannot stand.

## C.

Finally, Dahl argues that the county and Cook deprived him of his protected liberty interest in bodily integrity without first affording him procedural due process. Specifically, Dahl believes that he had a constitutional right to a pre-deprivation hearing before he was assaulted because the assault was made in a disciplinary manner by the chief policy maker and was therefore authorized.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 333 (internal quotations omitted). But, "[p]re-deprivation procedures are not feasible to protect against a random and unauthorized act of violence[,]" and no due process violation results, particularly when the injured party has an opportunity for a meaningful post-deprivation hearing. New v. City of Minneapolis, 792 F.2d 724, 725 (8th Cir. 1986) (per curiam) (citations omitted).

Viewing the facts in the light most favorable to Dahl, there is no evidence that Sheriff Cook was authorized to assault employees, as would be necessary for him to prevail on a claim of procedural due process. Sheriff Cook "lost his temper;" such conduct does not allow for Rice County to provide for a pre-deprivation hearing. See

<u>Parratt v. Taylor</u>, 451 U.S. 527, 541 (1981), <u>overruled on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986). And, Dahl was offered multiple post-meeting hearing opportunities, including remedies outlined in his Collective Bargaining Agreement. We are persuaded by the district court's analysis that Sheriff Cook's alleged assault was a random, unauthorized act and that the county was not in a position to provide for pre-deprivation process. Accordingly, the district court correctly granted summary judgment on the section 1983 claim alleging a violation of Dahl's procedural due process claim.

III.

For the foregoing reasons, the judgment of the district court is affirmed.

_____